Deputy Attorney General John Appelbaum, for the defendants in this case, I'd like to reserve five minutes for rebuttal, please. All right. This case involves whether two previously litigated class action institutions should have been included into the Plata remedial or Back in, defendants presented evidence before the district court that back in August of 2000, a special master had found that the two Schumann institutions, California Correctional Women's Facility and the central California Institution for Women, were in compliance with 56 medical items, that those 56 medical items that were fixed were identical to the complaints alleged in Plata. Now, before you get into this, you have a problem about establishing jurisdiction. I'd like to know what's your basis for jurisdiction here. That's a good question. Our basis for jurisdiction, Your Honor, would be 1292. The basis for that. And what injunction did it grant? That's a good question. What we're moving under is Carson and the EEOC decision cited in our brief. Carson expressly held you don't have to appeal from the injunction itself. And, in fact, in Carson, there was a motion brought to enter the injunction. It never got to a fairness hearing or actual injunctive application. The Supreme Court in that case held that as long as it had the practical effect of modifying the proposed consent decree, there was jurisdiction to hear it. And that's certainly consonant with the EEOC decision, which expressly held, quote, if the district court erroneously interpreted the terms of the consent decree, it modified that injunction within the meeting of 12, section 1292A1. But that's after it's entered. Here you're appealing the order denying the defendant's motion to exclude the woman inmates based on the shahmadi class. That order was entered May 21, and the court approved the stipulated injunction on June 20, and you did not appeal from that. So I guess when you elaborate for me how you think the denial of the motion to exclude the woman inmates modified the injunction, which was not entered until a month later. That's an excellent question. I'm glad we got a climax on that one. I appreciate that. The reason is this. In the Carson decision and in the EEOC decision, and as well as this Court's decision in Page, as long as the effect of the district court's action is to modify a proposed consent decree, you can actually appeal directly from that order. And in fact, in the Carson decision, it never reached the fairness hearing. And indeed, that's what plaintiffs objected to in the Carson decision, because they said, well, it never reached the fairness hearing, you don't have an appealable issue. And in Carson, the Supreme Court said, well, as long as it had the practical effect of modifying the proposed consent decree, there indeed was jurisdiction. And I would note in the EEOC decision that we cited, in that case also there was no injunction actually entered. How did it modify the proposed consent decree? The paragraph in the proposed consent decree said that you agreed to disagree. Right. I mean, I can see a lot of ways you could have preserved this for appeal. You could have reserved it in the consent decree itself, like a conditional consent decree subject to appeal of the question of whether or not women inmates should be included. Or you could have immediately requested certification in your 1292B. I just don't see how by agreeing to disagree, you did anything that preserved a right to appeal from something. Okay. Really, on two ‑‑ I'd answer that question on two different grounds. One is, when the district court interpreted the stipulation, and we find in two critical respects, one when the district court said, well, paragraph 29 of your stipulation means that you waived. The court interpreted paragraph 29 to mean that we didn't ‑‑ I'm sorry. Blanking out. That we ‑‑ oh, that we had agreed to a PLRA remedy for the Shoemate institutions and that, therefore, they were similarly situated because we, according to the district court, under paragraph 29, we had already agreed to the remedy that would apply to those two institutions. And second, when the district court put the burden of proof and presumption on defendants that those two institutions should be included. So in that sense, we would certainly maintain that the district court erroneously interpreted it and modified it. Second, any time the district court, in this case under the Page decision, because class certifications inextricably intertwined with the application of injunctive relief, any time the district court made a decision to include these institutions, it necessarily means the application of injunctive relief. And, therefore, to answer your question, they would be subject to the injunctive relief and it would be appealable. Excuse me. Has a final judgment been entered in this case now? In other words, the objection is this is an interlocutor order and not final. Is the case final now? The consent decree itself is final. We are undergoing injunctive relief. I would note under 1292 there's jurisdiction to hear the appeal of the injunctive relief without a final judgment as to defendant's compliance with the remedial plan. So I would certainly emphasize on the jurisdictional issue that including the Schumann institutions into the class necessarily expanded the scope of the injunction because the parties couldn't agree. And once the district court did that, it became appealable. And in addition, the way the district court interpreted paragraph 29 and defense argued that that in fact did a modification, that there would be jurisdiction as well. I don't know if I answered your question adequately. I'm sorry. Paragraph 29 you said? Of the stipulation, correct. That would be. Well, that's the one that stipulates to the PLRA condition, right? Correct. That's page 115 of our excerpts. And in a sense, the linchpin, to go back to my argument, I don't know if you had more questions on jurisdiction or not. The linchpin of our argument is essentially res judicata, and you have a cascading effect after that because once you decide that there's res judicata as to the Schumann and, indeed, they were previously litigated. Indeed, they did come into compliance. Indeed, there was a dismissal with prejudice, which would make it precedential value for res judicata purposes. Then everything flows from that because plaintiffs then would need to show a new constitutional violation at those two institutions since August of 2000. We know they didn't do that. We also know that under the PLRA, the judge, Prison Litigation Reform Act, the judge would have had to tailor a unique remedy to address that particular constitutional violation. We know that didn't occur as well. The district court instead relied on the allegations in the complaint and said, well, they've alleged general systemic problems in the institution in general. Defendants strongly seem to maintain that that isn't sufficient showing in and of itself, both for res judicata purposes, the fact that plaintiffs alleged generalized systemic problems certainly wouldn't defeat the fact that those two institutions were fixed in 2000 and the need to show. Just out of curiosity, did you have a hand in drafting this stipulation? Yes. Then I want to ask you, when you drafted Paragraph 8, what was your understanding of the issues encompassed when you say the parties disagree about whether or not those prisoners from the CIW and the CCWF should be members of the class? What's the disagreement on that? I mean, you know, whether they fell from the class definition, whether they were adequately represented, you know what I mean? What issues did you think were encompassed by that, by that Paragraph 8? The parties had reached an impasse. Basically, defendants had maintained we've already fixed the Schumann institutions as of August of 2000. They shouldn't be a part of the plot of class action. We really wanted to make this settlement happen. It's important to the Department of Corrections to improve the care overall. So the goal was let's make sure that the remaining institutions are improved. And that's why we decided, you know what, as to these two institutions that we can't agree to, let's just go ahead and exclude them from the class and agree to disagree on it, and that defendants would bring a motion. It was a strange procedure. You didn't agree they should be included in the class on the basis that they were not similarly situated because they were part of another prior settlement, which would trigger potentially different PLRA standards or past compliance issues. You didn't think they were similarly situated. Correct. All right. So that was the sole part of your disagreement as to why they shouldn't be there. That was correct. That was the primary disagreement, that we felt that res judicata would preclude relitigation of the same medical issues that we had already remedied, and the PLRA itself would present a unique remedy for those institutions, and therefore they weren't going to be similarly situated to the remainder of the class to whom we had agreed upon a remedy. But they, the plaintiffs argued that that's fine. They had, that all of those things dealt with the subject of the prior injunction consent decree, but that there were new violations encompassed within the scope of the new consent decree that you could settle or resolve by bringing them into the class. Correct. Right. So how would res judicata bind you as to the new allegations of noncompliance? Two fundamental responses to that. One is we know res judicata precludes relitigation of the same issues before the district court. We knew that plaintiffs in this case didn't have a single plaintiff that had been granted allegedly inadequate medical care at those two institutions, and the complaint itself simply didn't address those two institutions at all. There's no mention of them. And we knew that under res judicata purposes. Are you saying that the complaint specifically alleges what's wrong with respect to every other correctional institution in the State by name? It makes generalized allegations based upon the 12, 10 class members. None of the 10 class members came from those two institutions. So I simply maintain, no, it didn't address those two institutions. Well, I mean, is there a name plaintiff, at least one name plaintiff from every other prison in California? No, there's not, Your Honor. Well, then what's the point of the argument? Well, the point of the argument is under res judicata, you've got to show, actually demonstrate a new constitutional violation. It's not enough in your complaint to say, well, we think there are constitutional violations. You have to demonstrate it unless the requirement is stipulated away, right? Right. And we maintain in this case, since we disagree that the shoemade institution should be a part of the class, that indeed we didn't stipulate it away. Solely on the ground of whether or not those plaintiffs were similarly situated. Correct. Based upon res judicata and PLRA. I also would emphasize, even if this Court were to look to Rule 23, plaintiffs didn't make an adequate showing, because I think under the Supreme Court's decision in Falcon, the plaintiffs have to make a showing on certification. I mean, that's their burden. They've got to make a showing. And the burden was on them. They admit in the briefs they didn't present any evidence. Defendants did present evidence. We showed the district court the 56 items that were remediated. We showed the district court a recent audit showing largely compliance with the shoemade injunction. And at that point, plaintiffs certainly had a burden to rebut defendants' evidence showing that these institutions indeed were not similarly situated based upon shoemade and based upon the recent audits. Plaintiffs didn't make any showing under Rule 23 necessary to meet their burden under paragraph 8 of the stipulation. So even if the Court doesn't want to go to res judicata and looks to Rule 23, plaintiffs  have to make a showing on certification.  Now, let me ask you a question, picking up on your initial desire was to settle the case. And you're now in a posture, and I'll just speak for myself, you've got a very dubious appeal, and the jurisdiction is really doubtful. And yet it's the sort of thing you would think counsel could settle if they sat down and you could delimit what you thought they should have to, how far the injunction could go and so forth and on. So I'll ask the other side, too. But, I mean, do you think this could be settled if you put your mind to it, realizing you may not get anything at all from this Court? Yes. And I know I filled out the form requesting ADR in this case. I did. We'll ask the other side. And what happened after you filled out that form? It was denied. Plaintiffs opposed it, and then it got denied. It was denied partly because the other side opposed it. I assume. But I certainly think so. I mean, I understand the importance of this case. And I think we undertook the settlement with the intent of trying to really improve care system-wide. If plaintiffs think that there are new constitutional violations and they want to bring them to us, we certainly want to look at them and provide a remedy for the shoemade institutions if there is a significant problem. That never happened in this case, and that's where the parties disagreed under Paragraph 8. The parties said, well, we can't agree as to whether they should be included in the class. And in this case, since inclusion in the class means application of injunctive relief, and I make no mistake about it, they are undergoing rigorous scrutiny as we speak. We've had audits. We've had tours. We've had to produce documents. They're currently undergoing application of injunctive relief. So under the Page decision, certainly it's had the practical effect of imposing injunctive relief at those two institutions. And they've undergone this. I mean, in August of 2000, and that was no small feat. I mean, it's hard to explain to this Court. I'm not aware of a single case where the Department has managed to persuade a special master that they've indeed complied with all the terms of a consent decree and gotten out of it this expeditiously, and they did so. So it was very important to try and obtain res judicata effect for that decision so that the Department knows that it has meaning when they actually comply. I would say in this case, under Rule 23, the burden did fall on plaintiffs. The district court interpreted Paragraph 29 to mean that the burden fell on defendants because it said defendants were the ones to bring the motion. And I agree. It's a quirky stipulation on that. But the express language of the stiff stated that the burden would not change under Rule 23 and that there were no presumptions concerning their inclusion. Yet when you look at the district court's order, they created an obvious presumption in or it created an obvious presumption in favor of including those institutions. I mean, the district court expressly stated that, well, you've already agreed to the same remedy as to these institutions. And as I've told this Court under Paragraph 8, we completely disagreed about whether these institutions should be in the class to which we had agreed to a remedy under Paragraph 29. Well, once you – once the district court interpreted a stipulation to mean that we had agreed to the same remedy, it's a cascade effect on the opposite side because, of course, we're going to be similarly situated because, according to the district court, we had indeed agreed to the same remedy. But as I strenuously maintained in our appellate brief and reply brief, that didn't occur. We didn't agree to include them in the class to which Paragraph 29 would apply. And it was plaintiff's burden under Rule 23 to establish, indeed, they were not similarly situated and meet their burden of typicality. And the allegations in the complaint weren't sufficient to meet that burden under Falcon. And certainly, once defendants made their showing to the district court that, indeed, we have remediated that institution and, indeed, that institution has remained – those two institutions have remained remediated, plaintiffs certainly had a burden to come up with something to rebut that, to meet their burden under Rule 23, to show new constitutional violations and to show that Shoemate no longer applies. They never met that burden under Rule 23. They certainly didn't meet that burden under res judicata purposes. And on that basis, they should not have been included into the class to which injunctive relief was applied. I don't know if I answered your question satisfactorily, or particularly, Your Honor, on the jurisdiction. I don't know if I addressed your concerns. Well, that's fine. I think we know your position. Let's hear from the other side, all right? All right. Let's reserve time. Thank you. Your time is all gone, but we'll give you a minute for a bubble anyway, at least on the jurisdictional issue. All right. Good morning. My name is Donald Spector from the Prison Law Office, representing the plaintiffs in this matter. I think the jurisdictional defect is fatal to this appeal. I think the Court properly has in mind the issue, as explained most precisely by Judge Wardlaw. The class certification-type order on May 21st was not an injunction. They appealed from it. Therefore, they are precluded from appealing. Therefore, they are precluded from relying on Section 1292 as a basis for their appeal. Well, it does have the effect of not modifying, but granting an injunction with respect to the CIW and the CCWF, doesn't it? No. All it does is define the scope of the class. If that analysis was correct, and that's the defendant's position, then every class certification order that ultimately results in an injunction would be appealable at the time that the class certification order was made. And the Page case, which the defendants rely on, actually proves our point, I think, and answers your question. So you're saying this order should be classified as an order that defines the class? It defines the scope of the class. That's all it does. It didn't order the defendants to do anything. It was purely a pretrial interlocutory order. Now, when the district court eventually issued the injunction, the stipulated injunction, obviously that covered now the class as defined. But that happens in every case where you have a class action. But there was no appeal taken from that injunction. There was no appeal taken from that. If there had been, it would have been closer to the Page case, which the defendants rely on, and in that case, there was an injunction from which they appealed, and there was also, like this case, a prior class certification order. But the court said, well, given the facts of that case, since the class certification order is inextricably intertwined with the injunction, we'll look at the propriety of the class certification order, even though the injunction was sort of in the nature of a preliminary or interim injunction. But here they didn't appeal the injunction, so they can't use that rationale. So I think the appeal is – I mean, I think the appeal lives and dies on the jurisdictional issue. I don't think you have jurisdiction to hear it. Kennedy. All right. Now, assuming we get by that, do you agree that on this race judicata, because it's a defense, the person who invokes it has the burden of establishing the element, namely you? I didn't invoke the defense. They invoked the defense. The defense is a defense of race judicata. They have the burden of showing it's true, and I don't think they've met their burden. What was in the record about the burden? No, about the actual facts. Judge Henderson said, well, this is based upon new facts and new events in Italy.  What was in the record to support that finding? The complaint, Your Honor. And, you see, the way this case evolved was we filed a complaint, and then we settled it and started this procedure where we filed – the only thing that was really on file with the district court was the complaint, and then we filed about nine months later, the stipulation asking for the court to approve it. Well, when the state's motion was made under the stipulation – Pardon me? When the state's motion was made under paragraph 8 of the stipulation, either side deduce any evidence in connection with that motion? The defendants produced evidence to show that what they considered what the current state of the conditions were as related to 56 specific items, which are not related to – You mean at the two women's prisons? Yes. No, but – Nothing about the rest of the prisons. And if you look at the paragraph 8, if you read it really carefully, which I'm sure you've done, but if I can emphasize a couple of points, I know it's a little ambiguous, but it says the parties agree that this action shall be maintained as a class action and that the class consists of all prisoners within the CDC with serious medical needs except those at Pelican Bay. Then it says that the parties disagree about whether the prisoners at the female institutions, and I quote, should be members of the class. It doesn't say they're excluded. It says we disagree whether they should still be members of the class. And then it says, you know, file the motion, and the last sentence says the motion, not the stipulation, the motion will not otherwise alter the burden of proof under Rule 23 or create a presumption concerning their inclusion. Certainly that's true. The motion didn't alter the burden, and the motion didn't create a presumption. But the stipulation's first sentence did say that they're included in the class. That's why I agreed to the last sentence. So you have the fact that you have 32 prisons. We agreed on 30 or 29 of them that these prisoners were going to be, it was going to be a class action on the basis of the allegations of the complaint. And what the defendant said was, well, we think since we complied with this other case, which was dismissed a year earlier, we should be entitled to res judicata because of that. Our response to that is that once that judgment is final, the res judicata ends at the time of the finality of the judgment, and one can sue after that based on new facts, which we did. If the situation was as the defendant suggests, there would be res judicata forever, and the plaintiffs at those institutions could never sue again based on serious medical needs. I don't know when they would ever be able to do it. Under their interpretation, res judicata lasts forever. Under the law, as we set forth in our brief, it only lasts until the time of the judgment. It lasts at least until someone can show change circumstances. Right. And we alleged change circumstances and they settled on that. I guess the question is whether that just an allegation alone is enough. Maybe it is because you settle it. In other words. Right. I said, well, no. Even though they settled, you can't say they conceded those allegations of the complaint because that was the very purpose of the reservation in paragraph eight of the stipulation. Right. To challenge that. No, I don't agree with that. I think their argument was that based on the shoemake class action, we are going to say that that's res judicata. And I accept that. They could argue res judicata because they're not similarly situated. And the stipulation says because of the previously litigated class action. So and only on that ground. So I accept the fact that they can argue, and that's why I settled it, that they can argue that the previously settled case, prior case, is res judicata because I knew that the law was that after the judgment in that case was over, I could allege new facts and it wouldn't be res judicata. And we would be entitled, if this case hadn't settled, we could file if this. Let's say Plata is dismissed. This case is dismissed today. And then let's say they take all the doctors out of the prisons tomorrow. I can sue tomorrow that the conditions on behalf of prisoners, of course, that the conditions that exist are unconstitutional. And that's where we are with the res judicata argument. Well, I asked you the question I asked the counsel to the statement. You've got a very good but very technical argument about the appeal. It might go the other way. But anyway, do you think you could settle it if you two got together? I don't know. I mean, I never would turn away a settlement proposal out of hand. So I would listen to anything. The way I was going to respond to you was this settlement was very difficult. It went to the governor's office twice to get approved. It took three years, basically, of work to settle. And the Department of Corrections felt strongly about this issue, and I couldn't in good faith have settled a case on behalf of the men's medical care when I had information leading me to believe that the women's medical care was bad as well. So we came up with this compromise, and they felt that they had already complied with the shoemake settlement. Therefore, they should have a legal argument that would exempt them from the class. And I said, bring it on, and let's let Judge Henderson decide it. And that was the sort of resolution of a difficult issue. But apparently after this appeal was taken, you rejected the offer by the circuit mediator to try to mediate this dispute, right? Is that correct or not? I think we wrote a letter saying that it would not be fruitful, and I still haven't. In other words, you think it would just be a waste of time? I would love to settle, but I don't think their position is very simple. They want the institutions out. We want the institutions in. I don't know what common ground there is. I don't want to make too many suppositions, but in other words, you couldn't confine it to a few egregious areas where you need the supervision. That's a possibility. I mean, let me put it this way. I'd be happy to go into settlement discussions with them to see if we could work it out. My own. So you're not optimistic. I'm not. That's about the outcome. Right. But if you want to if you think it's worthwhile, we'd be happy to go through with the process. It's OK. Let me get back. Let me get back to the merits of this position now. The whole thing on whether or not women's medical care should be barred by race to Dakota apparently was based not upon any showing or any of this, but only upon the allegations made in the complaint and the stipulation. I mean, the stipulation says that these prisoners are members of the class and defendants have to move to exclude them. No, but that same paragraph also says and we have a disagreement. Right. That's why they're going to move to exclude. This wasn't a motion to certify the class. The class was already certified. They moved to exclude these women from the class. That's the this is a very different procedural posture than you're usually in. It's it's it's equivalent to somebody asking under Rule 23 D to modify the class. So if it's a motion to if it's a motion to exclude. Right. Then your position is just like race to Dakota. The burden is upon the moving party to show why their motion should be granted. Exactly. Factually factually as well as legally. Right. And and not only that, and what was the factual showing on the motion? Well, the factual showing on the motion was that they had this consent decree in a prior case. It was over and they were and they were still out of compliance with some of the provisions of that, even then it was audited. And this and their expert went into the institution. They didn't measure it against the Constitution. They measured it against the prior settlement. So I don't think that was valid either. And can I just make one more point about the race to Dakota defense, which I think hasn't been emphasized enough? And that is under the Hannon versus data products case, which 976 Fed second for 97, a defendant that's asserting race to Dakota has to meet two prongs. The first one we've discussed, which is they have to show that it's race to Dakota and including within that there, there were the same causes of action. But the prong that the defendants ignore is the prong that says it has to be the focus, the major focus of litigation such that it would somehow undermine the plaintiffs, the rest of the case and shift the focus from that, from the rest of the plaintiffs to this small issue. The district court made a finding that this would was not a major focus of litigation because it involves only two out of 30 prisons. That finding, I think, has to be measured by an abuse of discretion standard, as does most of his other conclusions. And I don't think you can say it's unreasonable of him to have found that it wouldn't be a major focus of litigation when it only involves one 15th of the of the subject matter of the case. OK. Anything else? Thank you. All right. Thank you, Mr. Spector. A rebuttal? Very quickly, I very much appreciate the opportunity to give a rebuttal. I will say this. Mr. Spector mentioned he seemed to have information that the Shumate institutions had problems. He didn't present those at the fairness hearing. He's never presented it to defendants. If he wants to enter into settlement, we would welcome it because we believe the remedy in the Shumate institutions will be significantly different than the remaining institutions. And why is that? Is that because of the restrictions of the PLRA? Why would the remedy be different? Right. Yes. It would be different because of the restrictions of the PLRA and the fact that the systems of care at those two institutions is significantly, I mean significantly different than the systems of care provided at the other institutions. And I don't want to belabor you with how that came to be, but it is. The care is completely different than the care being rendered at the remaining institutions. I do really want to persuade you on jurisdiction. It doesn't have to turn on whether the fairness hearing imposed the injunction at that moment. It doesn't have to turn on whether injunctive relief has actually been applied. I'd note in the Carson case, the Supreme Court expressly held that, that in Carson, the motion was made, and it was prior to the district court ever entering an injunction. And I would certainly note in the Page decision, this court's decision on class certification was a year before, actually the district court's decision was a year before the injunctive relief ever came out. And Page analyzed the issue of class certification independent of the MSJ, it was motion for summary judgment, and the interim relief separately. And it didn't hinge on the fact that the defendants had appealed the interim MSJ and the interim injunctive relief at that moment. The class certification order was independently appealable because it was inextricably intertwined, and they held that it modified or could have modified the injunction in that case. I'd note in the EEOC decision, they expressly held that if the district court misinterprets or erroneously interprets a proposed stipulation, that indeed that alone confers jurisdiction, even if the injunction is never imposed or maybe is imposed at a later date. So as long as the district court's action in this case effectuated a modification or granting of relief, which defendants maintain it did, then indeed there is jurisdiction before this court to hear the matter. I don't think there's a dispute that there's irreparable harm to defendants. I don't know if you have any questions on that. No. All right. I really appreciate your time. Thank you. Thank you, Mr. Applebaum. Thank you again, Mr. Spector. This case also is submitted for decision. Court now stands in adjournment for the day.
judges: Noonan, Tashima, Wardlaw